OPINION OF THE COURT
Arthur E. Blyn, J.
Motion Nos. 99 and 100 of March 13,1981 and No. 132 of February 24, 1981 are consolidated and disposed of as follows.
In this declaratory judgment action, plaintiff moves for summary judgment (pursuant to CPLR 3212 and 3211, subd [c]) declaring that it has the right on account of the existence of a conflict of interest to select and substitute its own counsel in the underlying tort actions, said counsel to be paid for by plaintiff’s insurers. Defendant Agricultural Insurance Co. (Agricultural), plaintiff’s primary insurer, cross-moves for summary judgment (also pursuant to CPLR 3212 and 3211, subd [c]) on the grounds that it has never disclaimed its duty to defend plaintiff in the underly *679 ing actions, that it intends to defend and control all litigation, that furthermore there is no conflict between the interest of the insurers and plaintiff insured and that the insurer has no duty to pay for plaintiff’s separate counsel. A similar cross motion for summary judgment has been made by defendant The Mission Insurance Co. (Mission), one of plaintiff’s two excess insurers, with the added ground that Mission, as maker of plaintiff’s second excess liability policy, has no present duty to defend plaintiff. Defendant First State Insurance Company (First State), plaintiff’s first excess insurer, moves to dismiss plaintiff’s complaint pursuant to CPLÉ 3211 (subd [a], par 7) for failure to state a cause of action. Defendant First State’s arguments reiterate those of the other two insurance companies.
There are at least seven underlying lawsuits against plaintiff which relate to the instant declaratory action. These arise out of an explosion and fire from an apparent gas leak at 325 East 36th Street, a premises managed by plaintiff management firm (the owner of the building, defendant Alpar Realty Associates [Alpar] is in default in the action and on these motions). In five out of these seven lawsuits, plaintiff is charged with “willful and wanton misconduct” and, is sued for punitive as well as compensatory damages. In the five actions, punitive damages are sought in the total sum of $169,000,000; compensatory damages in the sum of $26,000,000. In all these lawsuits, plaintiff is defended by counsel chosen by Agricultural, its primary insurer.
At the time of the explosion and fire, plaintiff had in force three comprehensive general liability policies which provide for personal injury and property damage indemnity in the total amount of 21 million dollars. Agricultural’s primary policy provides coverage of one million dollars. The first excess policy of First State provides coverage of 10 million dollars, the second excess policy of Mission provides coverage of an additional 10 million dollars.
Plaintiff contends that defendants Agricultural and First State have disclaimed liability for punitive damages. This disclaimer gives rise, in plaintiff’s view, to a conflict of interest on the part of the insurance companies on the *680 issue of punitive damages. Plaintiff reasons that the insurers have no interest in minimizing the amount of punitive damages for which they bear no liability, but rather may have a contrary interest at settlement and trial in inflating punitive damages at the expense of compensatory damages for which they are liable and would wish to minimize.
The parties do not dispute the fact that by the terms of the three policies Agricultural carries the chief burden of defending plaintiff. By the terms of its policy Agricultural “shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury and property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient. But the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements”.
Agricultural admits it is under a duty to defend against all claims in the lawsuits arising from the occurrence and claims that its interest in defeating claims for punitive damages coincides with that of plaintiff so that there is no conflict of interest. Furthermore, defendants claim that no conflict of interest exists because they have not disclaimed coverage, but only liability for punitive damages which State law has determined is not a risk which may be insured against. Defendant First State, however, has made a reservation of rights to disclaim coverage in case willful, wanton negligence is found against plaintiff which this court interprets, for the purposes of this motion, as a punitive damage disclaimer.
The issue thus presented is whether in the circumstances of this case a sufficient conflict exists between the interest of the insurers and that of the insured to warrant independent, controlling counsel selected by plaintiff and paid for by defendants.
New York law holds that where punitive damages are awarded for willful or reckless negligence over and above compensatory damages, it is against public policy to require the insurance company to be liable for the punitive *681 damages intended to punish the defendant and not to compensate the plaintiff. (Hartford Acc. & Ind. Co. v Village of Hempstead, 48 NY2d 218; Padavan v Clemente, 43 AD2d 729; Teska v Atlantic Nat. Ins. Co., 59 Misc 2d 615.) Coverage of punitive damages is barred by the fundamental principal that no one should be allowed to take advantage of his own wrong. (Hartford Acc. & Ind. Co. v Village of Hempstead, supra, at p 226, citing Messersmith v American Fid. Co., 232 NY 161.) In this respect letters to plaintiff from First State and Agricultural which deny coverage for punitive damages correctly state the law.
Nevertheless, the insurer is obligated to defend the insured against lawsuits where compensatory and punitive claims are commingled on the theory that the insurer’s duty to defend its insured is broader than its duty to pay. (Utica Mut. Ins. Co. v Cherry, 45 AD2d 350, affd 38 NY2d 735.) Most liability policies contain, as does Agricultural’s, a provision obligating the insurer to defendant against all actions alleging facts and circumstances covered by the policy even though such suits are groundless, false or fraudulent (see 50 ALR2d 458, 463). The insurer’s duty to defendant includes those actions in which alternative grounds are asserted, some within and others without the coverage. (Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368.)
Normally, an insurer’s duty to defend is coupled with the right to control the defense of the litigation (7C Appleman, Insurance Law and Practice, §4681, pp 2-5; Podolsky v Devinney, 281 F Supp 488). The purpose of such right is to allow insurers to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims. Giving the insurer exclusive control over litigation against the insured safeguards the orderly and proper disbursement of the large sums of money involved in the insurance business. (7C Appleman, Insurance Law and Practice, § 4681, pp 2-5.) Of course, the insured, at his own expense, may choose to hire independent counsel.
However, in situations where conflict of interest and loyalties are apparent, “The insurer’s desire to control the defense must yield to its obligations to defend the insured”. (Penn Aluminum v Aetna Cas. & Sur. Co., 61 AD2d 1119, *682 1120.) In such cases, the insured has the right to obtain counsel of its own choice to be paid for by the insurance company. (Hartford Acc. & Ind. Co. v Village of Hempstead, 48 NY2d 218, supra; Utica Mut. Ins. Co. v Cherry, 45 AD2d 350, supra; Prashker v United States Guar. Co., 1 NY2d 584; Penn Aluminum v Aetna Cas. & Sur. Co., supra; Rimar v Continental Cas. Co., 50 AD2d 169.)
These cases illustrate the problem of conflict of interest between insured and insurer arising out of the character of the act of the insured causing injury. Clearly, when an affirmative act (be it criminal or intentional) of the insured may negate coverage by the policy, the loyalty of any attorney who might defend such action is divided. On the one hand the attorney’s duty to the insured is to try to defeat recovery on any ground, on the other his duty to the insurance company is to defeat recovery only on grounds as might render the insurance company liable. In Prashker (supra, p 593) (in the context of an airplane crash where the pilot may have violated the condition of his license and therefore of his insurance policy) the Court of Appeals stated: “If any such conflict of interest arises, as it probably will, the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select”. In Utica Mut. Ins. Co., for the same reasons, the insured, previously convicted of manslaughter in a criminal action related to the subject automobile accident, was allowed to select independent counsel to be reimbursed by the insurer as part of its duty to defend.
American Home Assur. Co. v Weissman (79 AD2d 959) relied upon by defendants is not on point. Most importantly, the right of the insured to control the litigation was not at issue. In that case, the malpractice insurer first undertook the insured’s defense but then disclaimed liability and sought to condition its continued defense upon the insured’s agreement to reimburse all litigation expenses if it was eventually determined no coverage under the policy existed. The insured was compelled to hire his own attorney in the underlying action but there is no indication he moved to continue with independent counsel or to control *683 the litigation. The issue before the court was the duty to defend and in that connection the court compelled the insurer to reimburse the insured for the legal expenses he was forced to incur to the date of its order. In dictum the court stated (p 960): “we do not mean to intimate that defendant is now free to select his own counsel and charge the expense thereof to plaintiff. Plaintiff is still entitled to control the defense of the action, including the selection of counsel provided that the defense is pursued in good faith and without any endeavor to demonstrate that the policy issued by plaintiff does not afford coverage to the claim”.
A conflict of interest with regard to ultimate liability closer to the problem posed by the instant action was recognized in Rimar v Continental Cas. Co. (50 AD2d 169, supra). There, the insurance company for a partnership accused of negligence, malpractice and fraud disclaimed coverage for punitive damages and acts of fraud but asserted its right to defend and to control the litigation. The Appellate Division, Fourth Department, citing Prashker and Utica Mut. Ins. Co., affirmed a Special Term determination that there was a conflict of interest as to liability coverage which required the retention of independent counsel by each of the partners, all to be paid for by the insurance carrier.
Recently, the Court of Appeals in Hartford Acc. & Ind. Co. v Village of Hempstead (48 NY2d 218, supra) primarily determined that public policy prohibits payment of punitive damages under insurance policies issued to governmental agencies as well as to private insureds. Incidentally, and at the end of its opinion, citing Prashker, the court held that the insurer’s liability for defense of a civil rights action where only punitive damages were sought (on grounds the police acted knowingly and intentionally) included responsibility to pay for attorneys selected by the municipality. (Hartford Acc. & Ind. Co. v Village of Hempstead, supra, at pp 228-229.) In affirming the insured’s right to select its own counsel and control the litigation, the court appears to have recognized the insured’s greater interest and risk in the litigation whose outcome might result in a large punitive damages award, which as a matter of law, would have to be borne by the insured.
*684 Clearly then, New York courts view litigation which asserts grounds that may be outside insurance coverage altogether as presenting at times a conflict of interest for the insurer and its chosen counsel which requires relief for the insured when such relief is sought. More recently conflict has been recognized where litigation asserts causes that are covered by insurance and other claims such as for punitive damages, which the insurer is required to defend" but, by law, may not pay. Allowing the insured to select independent or controlling counsel at the insurance company’s expense seems to depend on the facts of each case.
Indisputedly, the great bulk of litigation involving insureds, wherein punitive damages may be routinely tacked onto the ad damnum clause, may be predictably, regularly and properly defended and controlled by the insurer, thus adhering, to the general rule. If punitive damages were a negligible or coequal portion of the total damages sought, defendants’ disclaimers therefor might not be of gre'at significance. But in five actions discussed at the outset punitive damages totaling 169 million dollars exceed compensatory damages more than sixfold. Moreover, if only one lawsuit were involved as was the case with American Home Assur. Co. v Weissman (79 AD2d 959, supra) the court might be sooner inclined to permit the insurer to continue and conclude the litigation. But the underlying occurrence in a residential building happened just last year, seven lawsuits involving a dozen injured plaintiffs are in progress and there is no telling how many more may be commenced against the. insured. Without doubting the sincerity of Agricultural’s commitment to defend plaintiff, we must recognize the existence of a conflict of economic interests. The temptation to settle any one or all of these lawsuits for sums reasonable to the insurer but not necessarily favorable to the insured will be strong.
The court’s decision is also affected by a further problem caused by the multiplicity of suits and large sums of money sought therein. By the terms of its policy, Agricultural’s duty to defend its insured stops once its primary limit of only one million dollars is exhausted. By any one of a number of these lawsuits brought to settlement or judgment Agricultural’s coverage conceivably may be ex *685 hausted. In such case the excess carriers will become liable for defense of further litigation. Yet it is undesirable to require a new staff and attorneys to step into the litigation at such a stage. (See 7C Appleman, Insurance Law and Practice, § 4682, p 37.) Thus under the peculiar facts and circumstances of this litigation, and in view of the ensuing conflict of interest between the insured and its insurers, the court determines that the insured is entitled to choose counsel and control all litigation, the reasonable expense of which shall be borne by the primary insurer and, should it become necessary, by the excess carriers as apportioned in their policies.
Accordingly, plaintiff’s motion for summary judgment is granted and plaintiff is adjudged entitled to the declaratory relief sought in the complaint to the extent herein indicated. Consequently, the cross motions and the motion to dismiss by the defendants are denied.