NANDORF, INC., Plaintiff-Appellant, v. CNA INSURANCE COMPANIES *et al.*, Defendants-Appellees.

First District (1st Division)   No. 84—1026

Opinion filed May 28, 1985.

Di Monte & Lizak, of Chicago (Chester A. Lizak, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Joshua G. Vincent, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Nandorf, Inc. (Nandorf), appeals from the trial court's dismissal of its declaratory judgment action against its insurer, defendant CNA Insurance Companies (CNA). The complaint sought reimbursement of attorney fees incurred by Nandorf in monitoring the defense provided by attorneys retained by CNA in a civil action brought against Nandorf by third parties. CNA provided the defense but reserved its rights to deny coverage for punitive damages. Nandorf now contends that the defense provided by CNA pursuant to its reservation of rights created a conflict of interest which entitled Nandorf to retain independent counsel to be paid for by the insurer CNA. We agree.

This controversy arose out of a complaint filed on May 5, 1983, by Delores Scott and others against Unique Thrift Shop, a retail shop owned and operated by Nandorf. (Scott v. Unique Thrift Shop, Inc., cause No. 82 L 8942.) Each of the plaintiffs in the Scott action sought $5,000 in compensatory damages and $100,000 in punitive damages based on allegations that employees of Unique Thrift Shop "seized the person" of the plaintiffs, set "upon them with their hands and began to yell at them, shoved them around from place to place within the store premises *** and imprisoned and incarcerated said plaintiffs for many hours against their will and consent." Pursuant to a comprehensive liability insurance policy in effect between Nandorf and CNA, Nandorf tendered the defense of the Scott action to CNA, who then retained the law firm of Baker & McKenzie.

On June 9, 1983, CNA notified Nandorf that any award of punitive damages would be Nandorf's responsibility since, in CNA's opinion, "it is against the public policy of the State of Illinois to provide insurance coverage for punitive damages." Nandorf then retained the law firm of Di Monte & Lizak (independent counsel) to monitor the defense provided by Baker & McKenzie and to evaluate CNA's position concerning their duty to indemnify Nandorf for punitive damages. Nandorf's counsel requested CNA to waive its reservation of rights and informed CNA of their intention to control the defense of the Scott action if CNA refused to do so. CNA declined to alter its position regarding punitive damages and refused to relinquish control of the litigation.

When CNA also refused to reimburse Nandorf for the expenses incurred in retaining independent counsel, Nandorf filed the present declaratory judgment action on November 15, 1983. On December 8,

1983, CNA settled the Scott action and compromised all claims for damages. The trial court in the declaratory judgment action subsequently granted CNA's motion to dismiss, finding that: (1) CNA's letter of June 9, 1983, was tantamount to a reservation of rights; (2) Nandorf was provided with a proper defense; (3) CNA's defense of Nandorf under a reservation of rights did not create a conflict of interest; and (4) Nandorf was not entitled to independent counsel paid for by CNA.

Nandorf now contends that a conflict of interest existed which entitled it to retain independent counsel paid for by CNA. Nandorf also contends that CNA's election to defend subject to its reservation of rights constituted a breach of its duty to defend. In view of our disposition of the case, we need not and do not decide the latter issue.

██ In Illinois an insurer is obligated to defend an action against an insured when the complaint in that action sets forth allegations which bring the claim potentially within the coverage of the insurance policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) The insurer's duty to defend is broader than the duty to pay, and the insurer may be obligated to defend against claims and causes of action which are not in fact covered by the policy. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 394, 442 N.E.2d 245.) In cases where there is potential coverage so that the insurer has a duty to defend, but the insurer believes that it has a valid policy defense, it must usually either (1) defend the tort action under a reservation of rights; or (2) secure a declaratory judgment as to its rights and obligations before trial of the original tort action. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 159, 384 N.E.2d 335; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 782-83, 387 N.E.2d 700, *appeal denied* (1979), 79 Ill. 2d 617.) Where a duty to defend exists, but the insurer refuses to defend and fails to take either course of action, it may be barred from disputing questions of coverage in a subsequent action brought against it by its insured who has incurred liability in the underlying action. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079; *Ayres v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33, 35, 424 N.E.2d 1316, *appeal denied* (1981), 85 Ill. 2d 576.

Generally, the insurer's duty to defend includes the right to assume control of the litigation. "The purpose of such right is to allow insurers to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims. Giving the insurer exclusive control over litigation against the insured safeguards the orderly and proper disbursement of large sums of money involved in the insurance business." (*Parker v. Agricultural Insurance Co.* (1981), 109 Misc. 2d

678, 681, 440 N.Y.S.2d 964, 967; 7C Appleman, Insurance Law & Practice sec. 4681, at 2-5 (1979).) Of course, the insured, at his own expense, may choose to hire independent counsel.

The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured. The attorney-client relationship between the insured and the attorney hired by his insurer imposes upon the attorney the same professional obligations that would exist had the attorney been personally retained by the insured. (*Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201.) Courts have recognized, however, that "in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured." (*Purdy v. Pacific Automobile Insurance Co.* (1984), 157 Cal. App. 3d 59, 76, 203 Cal. Rptr. 524, 534; see also *United States Fidelity & Guaranty Co. v. Louis A. Roser Co.* (8th Cir. 1978), 585 F.2d 932, 938 n.5.) This reality frequently gives rise to conflicts of interest between insurer and insured.

When conflicts arise, the Illinois Supreme Court has recognized a "limited exception" to the general rule that an insurer controls the defense of its insured. The insured is entitled to assume control of his own defense in the underlying action. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 478, 430 N.E.2d 1104.) The conflict confronting the attorney employed by the insurer may be resolved by full disclosure and consent from the parties. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 198.) However, the ethical problem is not solved by the insurer's electing to defend under a reservation of rights. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 457; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 156.) In a conflict situation where the insured rejects the insurer's offer to defend under a reservation of rights, the insurer's obligation to defend is satisfied by reimbursing the insured for the costs of independent counsel. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 152.

In determining whether a conflict of interest exists, Illinois courts have considered whether, in comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less-than-vigorous defense to those allegations. (*County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 43, 446 N.E.2d 584; see also *O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 738-39, 447 N.E.2d 985.) An insurer's interest in negating policy coverage does not, in and of itself, cre-

ate sufficient conflict of interest to preclude the insurer from assuming the defense of its insured. (113 Ill. App. 3d 734, 739.) However, a conflict of interest has been found where the underlying action asserts claims that are covered by the insurance policy and other causes which the insurer is required to defend but asserts are not covered by the policy. See *Thornton v. Paul* (1978), 74 Ill. 2d 132; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187.

In the instant case, the complaint in the underlying action sought a large amount of punitive damages and a relatively small amount of compensatory damages. CNA disclaimed liability only for punitive damages. The insurer and the insured shared a common interest in a finding of no liability. However, if Nandorf was found liable, their interests diverged. CNA's interests would have been just as well served by an award of minimal compensatory damages and substantial punitive damages. Such an award is not inconceivable. As a result of its reservation of rights, CNA had an interest in providing a less-than-vigorous defense to allegations in the Scott complaint which, if proved, would have supported an imposition of punitive damages. (See *Robinson v. Wieboldt Stores, Inc.* (1982), 104 Ill. App. 3d 1021, 433 N.E.2d 1005.) CNA's failure to vigorously defend those allegations would have had the effect of subjecting its insured to greater liability. Clearly, the insurer's fidelity to its insured was hampered by its own interests in this case.

In contrast, Nandorf's interest lay in reducing any potential punitive damages award, regardless of the compensatory damages awarded. Therefore, if liability was imposed, it would have been in Nandorf's interest to have a determination that its employees acted in good faith. A finding of good faith would not have prevented an award of compensatory damages but would have precluded an award of punitive damages. (See *Shelton v. Barry* (1946), 328 Ill. App. 497, 66 N.E.2d 697.) CNA would have had little interest in seeking such a finding. Because CNA's reservation of rights placed the insurer and insured at cross-purposes with respect to allegations in the Scott complaint, we find that an actual conflict of interests existed between Nandorf and CNA which rendered it improper for CNA to retain control of the litigation.

Courts in other jurisdictions have similarly recognized that a conflict of interest may arise where an insurer offers to defend its insured while disclaiming coverage for punitive damages. See *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.* (1984), 162 Cal. App. 358, 208 Cal. Rptr. 494; *Previews, Inc. v. California Union Insurance Co.* (9th Cir. 1981), 640 F.2d 1026 (applying California law);

*Parker v. Agricultural Insurance Co.* (1981), 109 Misc. 2d 678, 440 N.Y.S.2d 964; *Rimar v. Continental Casualty Co.* (1975), 50 App. Div. 2d 169, 376 N.Y.S.2d 309.

Moreover, CNA's course of conduct throughout the Scott litigation underscores the existence of a conflict of interest. CNA steadfastly refused to waive its disclaimer of liability for punitive damages even though Nandorf informed it of Illinois cases which have held that Illinois has no public policy prohibiting an employer from insuring himself against vicarious liability for punitive damages assessed against it in consequence of the wrongful conduct of one of its employees. (*Beaver v. Country Mutual Insurance Co.* (1981), 95 Ill. App. 3d 1122, 1125, 420 N.E.2d 1058; *Scott v. Instant Parking, Inc.* (1969), 105 Ill. App. 2d 133, 245 N.E.2d 124, *appeal denied* (1969), 40 Ill. 2d 578.) CNA also failed to pursue the preferable course of filing a declaratory judgment action as soon as the coverage issue arose, so that the possible conflict could have been considered in a proper judicial environment. (*DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 37, 351 N.E.2d 302, *appeal denied* (1976), 64 Ill. 2d 595; *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 897, 318 N.E.2d 315.) Although CNA asserts that its counsel adequately shielded Nandorf from liability by settling the Scott action for a relatively small sum of money, this assertion is based on hindsight and does not negate the existence of a conflict of interest between CNA and its insured.

CNA cites *Maneikis v. St. Paul Insurance Co.* (7th Cir. 1981), 655 F.2d 818, as support for its contention that a conflict of interest did not exist in the instant case because the insurer and the insured were not "complete adversaries on a crucial issue which would necessarily be decided either one way or the other if liability was imposed." (655 F.2d 818, 825.) CNA's reliance on *Maneikis* is misplaced. In addition to the general rule that Federal circuit court decisions are not binding on Illinois courts (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 118, 368 N.E.2d 891), *Maneikis* is factually distinguishable from the instant case in that the right of the insured to control the litigation was not at issue in that case. In *Maneikis*, the issue was whether the insurer wrongfully refused to defend its insured. Moreover, the Illinois Supreme Court has never expressly held that a conflict of interest only can arise in situations where mutually exclusive theories of recovery are asserted against the insured. Also, courts in Illinois and other jurisdictions have not adopted the restrictive test set forth in *Maneikis*. See *O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734; *County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35. See also *Continental Insurance Co. v.*

*Bayless & Roberts, Inc.* (Alaska 1980), 608 P.2d 281, 289; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (7th Cir. 1976), 536 F.2d 730, 737 (applying California Law); *Tomerlin v. Canadian Indemnity Co.* (1964), 61 Cal. 2d 638, 394 P.2d 571, 39 Cal. Rptr. 731.

■ Finally, CNA contends that Nandorf's declaratory judgment action was premature in that Nandorf should have waited until punitive damages were actually assessed and CNA refused coverage for them before bringing this action. We do not agree. CNA's contention is contrary to the purpose of the declaratory judgment procedure, which is to settle and fix rights before the parties have irrevocably changed their positions. (*Miller v. County of Lake* (1979), 71 Ill. App. 3d 478, 389 N.E.2d 630; *La Salle Casualty Co. v. Lobono* (1968), 93 Ill. App. 2d 114, 236 N.E.2d 405.) Moreover, the existence of a conflict of interest should be identified early in the proceeding so it can be treated effectively before prejudice occurs to either party. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187; *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.* (1984), 162 Cal. App. 3d 358, 371 n.7, 208 Cal. Rptr. 494, 503 n.7.) Nandorf could have been substantially prejudiced if it had been forced to dispute coverage with CNA while burdened with an adverse final judgment imposing punitive damages.

Our finding that a conflict of interest existed in the instant case is not meant to imply that an insured is entitled to independent counsel whenever punitive damages are sought in the underlying action. Under the peculiar facts and circumstances of this litigation, punitive damages formed a substantial portion of the potential liability in the Scott action, and CNA's disclaimer of liability for punitive damages left Nandorf with the greater interest and risk in the litigation. Notwithstanding the common interest of both insurer and insured in finding total nonliability in the third-party action, the remaining interests of the two conflicted to such an extent as to create an actual ethical conflict of interest warranting payment of the insured's independent counsel by the insurer. Accordingly, the trial court's judgment and order dismissing Nandorf's declaratory judgment action is reversed and the cause is remanded with instructions to grant the relief sought in the complaint to the extent herein indicated.

Reversed and remanded with directions.

CAMPBELL and BUCKLEY, JJ., concur.