Susanne **LITTLEFIELD**,
Plaintiff-Appellee,

v.

Malcolm **McGUFFEY**, also known as
Wally Mack and Santa Maria
Realty, Defendants,

and

State Farm General Insurance Company,
Garnishee–Defendant–Appellant.

Nos. 92–1494, 92–1792.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 6, 1992.

Decided Nov. 5, 1992.

Aram A. Hartunian (argued), Steven P. Schneck, Hartunian & Associates, Chicago, Ill., for plaintiff-appellee.

Richard H. Hoffman, Querrey & Harrow, Karen A. Covy, Cook County State's Atty.'s Office, James L. Elsesser, John T. Harris, Elsesser & Associate, Chicago, Ill., for defendants.

Michael C. Borders (argued), Rebecca O. Carlins, Rooks, Pitts & Poust, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, and POSNER, Circuit Judges.

BAUER, Chief Judge.

Last year Malcolm McGuffey appealed a jury finding that he had violated Susanne Littlefield's rights under both the Equal Opportunity in Housing provision of the Civil Rights Act of 1866 and the Fair Housing Act as amended by the Fair Housing Amendments Act of 1988. 42 U.S.C.A. §§ 1982, 3604, 3613, and 3617. Additionally, he challenged the jury's determination that he was liable under Illinois common law for intentional infliction of emotional distress. McGuffey also appealed Judge Williams' denial of his motions for judgment notwithstanding the verdict, or, alternatively, for a new trial. We upheld the verdict as well as the district court judge's award of attorney's fees and denial of a fee multiplier. State Farm General Insurance Company ("State Farm"), McGuffey's insurer, now appeals the district court's subsequent determinations that the company is liable for Littlefield's attorney's fees and related expenses.

## I.

The events giving rise to this protracted litigation, well documented in *Littlefield v. Mack,* 750 F.Supp. 1395 (N.D.Ill.1990), and *Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992), do not bear repeating in any detail. Suffice it to say, McGuffey reneged on a housing rental contract with Littlefield after learning that she had an African–American boyfriend, and that the two had a daughter. From ugly, the story then turned bizarre. A veritable chameleon, McGuffey adopted multiple personas and pseudonyms to harass and threaten Littlefield, as well as her boyfriend, daughter, and sister. The jury found in favor of Littlefield, awarding her $50,000 in compensatory damages and $100,000 in punitive damages.

This appeal focuses exclusively on the scope of a building owner's insurance policy issued to McGuffey by State Farm. In its section entitled "Additional Coverage", the policy provides:

We cover the following in addition to the limits of liability:

1. Claim expenses. We pay:

a. expenses incurred by us and costs taxed against any insured in any suit we defend.

Appellant's Brief, filed Oct. 6, 1992, at 7.

An intentional acts exclusion clause in the policy created the possibility that damages predicated on a finding of liability could exceed State Farm's contractual obligation to pay. Recognizing what it thought to be a possible conflict of interest, State Farm referred the defense to the law firm of Querrey & Harrow, explaining to McGuffey in some detail that the firm would be representing only him, that State Farm would remain uninvolved in the defense, and that McGuffey could choose other counsel at State Farm's expense if he so desired. He did not, and the Querrey & Harrow firm represented McGuffey at trial as well as on direct appeal here.

After we upheld the district court's judgment, *see Littlefield,* 954 F.2d at 1337, the district court granted Littlefield attorney's fees and expenses pursuant to 42 U.S.C. § 1988(b) (1991). Littlefield soon thereafter served State Farm with a garnishment summons seeking payment. The district court granted Littlefield's motion for summary judgment and denied State Farm's cross-motion, 789 F.Supp. 909 (1992). Later it granted her motion to supplement garnishment, 789 F.Supp. 914 (1992). The total attorney's fees and expenses in question amount to $217,882.38. State Farm appeals, challenging the district court's determination that the insurance policy covers attorney's fees under § 1988(b).

## II.

### A. Standard of review

■ We review the entry of summary judgment *de novo. Hayes v. Otis Elevator Co.,* 946 F.2d 1272, 1277 (7th Cir.1991). In so doing the court must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). We will affirm summary judgment when the record presents "no genuine issue of material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56.

### B. The insurance policy

The building owner policy at the center of this dispute provides that State Farm will cover, in addition to the limits of its liability, "expenses incurred by us and costs taxed against any insured in any suit we defend." Appellant's Brief, filed May 27, 1992, at 7. This appeal, therefore, turns on the meaning of two words—"costs" and "defend". If State Farm did in fact *defend* McGuffey during the proceedings, then it is contractually obligated to pay for any *costs* assessed against him, including attorney's fees if they are indeed costs. Predictably, the parties devote much of their attention to definitional debate. Our discussion focuses on whether costs include attorney's fees, and whether State Farm defended McGuffey.

### 1. Costs

■ State Farm contends that the term "costs" in the policy does not cover

attorney's fees. The company argues that neither the common nor historical understanding of the term "costs" contemplates attorney's fees. But "costs" has no uniform meaning, and we are reluctant to create federal common ·law defining the term. Costs can include attorney's fees and expenses either if a statute provides for it or if the parties so agree in a valid contract.[1] *Hall v. Cole,* 412 U.S. 1, 4, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). Section 1988 is one such statute, and we read State Farm's policy with McGuffey in conjunction with § 1988 to provide for attorney's fees.

Section 1988 expressly provides that an individual prevailing on a civil rights claim may receive "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The United States Supreme Court as well as this court have upheld § 1988's stipulation that attorney's fees are part of costs. *See, e.g., Hutto v. Finney,* 437 U.S. 678, 697, 98 S.Ct. 2565, 2577, 57 L.Ed.2d 522 (1978); *Argento v. Village of Melrose Park,* 838 F.2d 1483, 1499 (7th Cir.1988). Moreover, several courts considering civil rights cases also have defined attorney's fees as costs. *E.g., Marek v. Chesny,* 473 U.S. 1, 5–9, 105 S.Ct. 3012, 3014–3017, 87 L.Ed.2d 1 (1985) (attorney fees are costs in civil rights suits and therefore are subject to cost-shifting provision of Fed.R.Civ.P. 68 in civil rights cases); *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 293 (6th Cir.1989) ("Costs in a civil rights case include any award of attorney's fees."); *Vaughn v. Westinghouse Elec. Corp.,* 526 F.Supp. 1165, 1168 (E.D.Ark. 1981) (attorney's fees allowed as part of award of costs to prevailing party in race discrimination suit).

State Farm faces a tough hurdle distinguishing the facts of *Argento,* a case that involved an insurance contract containing language nearly identical to the policy in this case.[2] Observing that § 1988 expressly equates attorney's fees and costs, we held that the insurance contract in *Argento* obligated the insurer to pay attorney's fees charged against its insured. *Id.* at 1499.

Undaunted by the remarkable factual similarities of this case to *Argento,* State Farm nevertheless urges the court to abandon precedent and hold that the use of the word "costs" in McGuffey's policy does not embrace attorney's fees. In support of its position, State Farm implies that the *Argento* holding is somehow inadequate because it addresses neither the statutory definition of "costs" contained in 28 U.S.C. § 1920, nor the historical distinction between attorney's fees and costs, nor the insurance industry's understanding of the term "costs". Appellant's Reply Brief, filed July 13, 1992, at 3. In deciding *Argento,* the court of course need not have delved into these matters. Section 1988(b), after all, expressly designates that fees can be part of costs. *Id.* at 1499.

State Farm's additional arguments merit cursory discussion. With copious citation to Illinois case law governing contractual interpretation, State Farm rehashes some of the same arguments repudiated in *Argento.* The company contends, for instance, that the district court disregarded principles of contract interpretation by giving a "forced and unnatural" meaning to the policy, primarily by failing to read the disputed provision in the context of the insurance policy as a whole. Appellant's Brief, at 8–16. But no magical meaning emerges from the contested clause when one reads it in conjunction with the rest of the policy. Moreover, *Argento* held that the insurance policy required the company to pay attorney's fees as part of costs regardless of the fact that the contract did not explicitly provide for payment of attorney's fees. *Id.* at 1499. That being so, State Farm furnishes no principled reason-

---

**1.** State Farm concedes the point in its main brief: "Attorneys' fees can only [sic] be included in "costs" when explicitly provided for by statute or contract." Appellant's Brief, filed May 27, 1992, at 15.

**2.** The policy in *Argento* paid for "all costs taxed against the insured in any suit defended by the company." *Id.* at 1499. The State Farm coverage at issue here provides payment for "costs taxed against any insured in any suit we defend." Appellee's Brief, filed June 29, 1992, at 8.

ing why mention of costs in McGuffey's policy deserves different treatment than the costs provision in *Argento*, a case decided well before State Farm issued McGuffey's policy.

State Farm undoubtedly has a brigade of attorneys on its payroll to keep the company apprised of legal developments that bear on company practices, policies, and balance sheets. If an insurer does not wish to underwrite attorney's fees charged against its insureds, it need only add words of exclusion to its contracts. Here, the four words "exclusive of attorney's fees", inserted into the policy after the word "costs", would have accomplished State Farm's goal. In the absence of this qualification, the district court correctly decided that the insurance policy's coverage of costs included attorney's fees.

### 2. Defend

State Farm is obligated to pay the costs of the attorney's fees so long as the other condition of the clause in question is fulfilled—namely that the preceding litigation can be construed as a "suit we defend." State Farm says that rather than defending McGuffey, it only funded his defense. Since an insurance company no more literally defends someone in a legal action than it performs surgery or repairs dented fenders, Littlefield responds that State Farm's distinction is spurious and renders meaningless contracts in which insurers promise to pay for costs and expenses incurred by their insureds in litigation. But this analysis is somewhat more fanciful than factual. While the district court found no conceptual difference between an insurer defending its insured and paying for that defense, the Supreme Court of Illinois as well as this court have recognized the distinction. *See Murphy v. Urso*, 88 Ill.2d 444, 451, 58 Ill.Dec. 828, 831, 430 N.E.2d 1079, 1082

(1981); *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818 (7th Cir.1981).

In Illinois, the duty of an insurer to defend is broader than its duty to pay. An insurer cannot simply decide not to defend its insured when it recognizes that a complaint potentially alleges actions not covered by a policy. *Murphy*, 88 Ill.2d at 451, 58 Ill.Dec. at 831, 430 N.E.2d at 1082. "[T]he insurer has not just contracted to protect the insured against liability, but has also agreed to relieve the insured of the burden of defending lawsuits seeking to establish that liability." *Maneikis*, 655 F.2d at 823. A liability insurer in Illinois may choose from three options when it is asked to defend an insured against claims that it believes might exceed the scope of coverage:

> (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.

*Id.* at 821.

A fourth option—an exception to this rule—permits the insured to select independent counsel only if there exists a conflict of interest between the insured and the insurer. *Thornton v. Paul*, 74 Ill.2d 132, 152, 23 Ill.Dec. 541, 549, 384 N.E.2d 335, 343 (1978); *Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.*, 832 F.2d 1037, 1045 (7th Cir.1987) ("Illinois courts allow an insured to appoint independent counsel to control the litigation where the parties' interests conflict."). It is under this exception that an insurer cannot truly be said to be defending its insured.[3]

Not just any conflict will do. In addition to the state courts of Illinois, this court

---

**3.** From *Thornton* evolved the rule that distinguishes between defense of an insured and payment for that defense. When a conflict of interest develops between an insurer and an insured, the insurer must decline to defend and, "[i]nstead of participating in the defense itself, ... must pay the costs of independent counsel for the insured." *Murphy v. Urso*, 88 Ill.2d 444, 452, 58 Ill.Dec. 828, 831, 430 N.E.2d 1079, 1082

(1981). Paying costs is all the insurer may do in such a situation. The insured, not the insurer, is entitled to assume control of the defense, *Illinois Masonic Medical Center v. Turegum Ins. Co.*, 168 Ill.App.3d 158, 163, 118 Ill.Dec. 941, 943, 522 N.E.2d 611, 613 (1st Dist.1988), and may do so by choosing counsel unaffiliated with the insurer. *Thornton*, 74 Ill.2d at 152, 23 Ill. Dec. at 549, 384 N.E.2d at 343.

also has considered in some detail the particular kinds of conflict of interest that must exist in order for an insurer to be excused—indeed, to be forbidden—from defending its insured. Reviewing the facts of *Thornton*, we observed that an insurer may not represent its insured " 'when the insurer's and the insured's interests in the conduct of the tort action are in *serious conflict.* ' " *Maneikis*, 655 F.2d at 825 (citations omitted). The insured and insurer, we explained, must be "complete adversaries on a crucial issue which would necessarily be decided *either* one way or the other if liability was [sic] imposed." *Id.* at 825. In *Thornton*, the insured could have been found liable because he had either committed battery or been negligent. While damages from battery would have been excluded from policy coverage, a finding of negligence would have enabled the insured to recover from his insurer. *Maneikis*, 655 F.2d at 855. *Maneikis* cataloged a number of other Illinois cases invoking the *Thornton* exception, all of which involved disputes that could result only in one of two mutually exclusive outcomes benefiting either the insured or the insurer.[4] In sum, the *Thornton* exception requires an either/or situation in which the insurer's interest would be advanced by a determination of intentional conduct beyond the scope of coverage.

One subsequent decision by an Illinois appellate court disagreed with *Maneikis*, finding that the either/or dichotomy need not be the only way for a legitimate conflict of interest to arise. *Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill.App.3d 134, 88 Ill. Dec. 968, 479 N.E.2d 988 (1st Dist.1985). Besides observing that Illinois state courts are not governed by the decisions of the Seventh Circuit, *Nandorf* noted that the Supreme Court of Illinois never has held that a conflict of interest exists only when the insured is accused of both negligent and intentional conduct but is covered for negligence alone. *Id.* at 139, 88 Ill.Dec. at 972, 479 N.E.2d at 992. Instead, *Nandorf* envisioned a different conflict of interest situation—one in which the insurer has "an interest in providing a less than vigorous defense". *Id.*[5] This situation could occur, for instance, when the insured is potentially liable not only for a small amount of compensatory damages acknowledged by the insurer to be covered, but also for a large amount of punitive damages recognized by the insurer as exceeding the bounds of the policy. *Id.* Under *Nandorf*, then, a conflict may exist when the insurer lacks incentive to defend its insured on a portion of the claims that appear not to be covered by the insurance contract.

State Farm argues that liability might have exceeded coverage because a clause in the policy could have exempted the company from paying for any intentional acts committed by McGuffey. Upon learning of the suit, State Farm says that it initially concluded that the policy's contemplation of "personal injury" potentially covered the complaint's allegations that McGuffey had illegally dispossessed Littlefield from her apartment and slandered her. Appellant's Brief, at 18. That portion of the complaint alleging intentional acts of racial discrimination, however, appeared not to be covered by the policy. In recognition of both its potential liability and what it termed a possible conflict of interest, State Farm referred McGuffey's defense to the law firm of Querrey & Harrow. A letter from the company alluded to the purported conflict, offered McGuffey the opportunity to select another firm at the expense of State Farm, and promised that the insurer would not interfere in Querrey & Harrow's de-

---

4. The court cited as examples: the insured's fire is a result either of arson or negligence; the insured kills either intentionally or negligently; the insured's driver is either an agent or an independent contractor. *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 825 (7th Cir. 1981). Of course the insurer and the insured's interests would be completely aligned in a finding of no liability.

5. The Supreme Court of Illinois has yet to address whether a conflict exists when the allegations in a complaint include noncovered, punitive damages. *See Illinois Mun. League Risk Management Ass'n v. Seibert*, 223 Ill.App.3d 864, 874, 166 Ill.Dec. 108, 115, 585 N.E.2d 1130, 1137 (4th Dist.1992).

fense work.[6] By taking this tact, State Farm maintains that it elected not to defend McGuffey. Whether the company believes it did so in accordance with *Thornton* or *Nandorf* is not clear. Nor, puzzlingly, is it evident what State Farm believed to be the exact nature of the conflict of interest.

■ Littlefield seizes on select language in the letter to demonstrate that State Farm did in fact defend the case. In particular, she points out that the correspondence refers to "the defense of this action by *our attorney* in your behalf" and asks McGuffey whether "it is acceptable for *us to continue handling the case* on these terms." Appellee's Brief, filed June 29, 1992, at 18. As State Farm suggests, this wording may be "unartfully" drafted. Still, the language alone is not a smoking gun that definitively resolves the question of whether State Farm defended McGuffey. More than use of the words "our attorney" is needed to establish that an insurer is defending its insured rather than merely paying the costs of the defense. Nor does the fact that Querrey & Harrow may have represented State Farm in previous matters—often and competently enough, perhaps, to have earned it the label "our firm"—suddenly convert the firm into a subsidiary of State Farm where insurance executives are at the helm of the legal practice. Similarly, the word "handling" is not *per se* evidence that State Farm was managing the lawsuit. Read not so literally, "handling" might well refer to the manner in which State Farm was proceeding with the entire matter.

■ Just as these isolated words and phrases fail to show that State Farm was engaged in defense, nor does the insurer prove that it merely funded that defense. While nothing in the record contradicts State Farm's assertions that it neither exercised actual control over the case nor encroached on the attorney-client relationship, State Farm's uninvolvement in the case does not mean *ipso facto* that it did not "defend" McGuffey.

■ A more fundamental matter, however, resolves the issue whether State Farm defended McGuffey. Namely, State Farm's claim that a conflict of interest existed is not at all borne out by the facts. Each of the five counts in Littlefield's complaint alleged acts or omissions requiring intentional, willful, or purposeful conduct on the part of McGuffey.[7] None of the acts of which he was accused could have

---

6. Specifically, the letter stated:

> [T]he defense of this action by our attorney in your behalf is not to be considered a waiver of [the intentional acts] policy defense or of any policy defense which may be involved in this case. If we do not hear from you to the contrary, we will assume that it is acceptable for us to continue handling the case on these terms.
>
> . . . . .
>
> We further advise you that this reservation of rights notice to you may create a conflict of interest between the position we have asserted as to non-coverage and the defense of your interest in this suit by Querrey & Harrow, Ltd. ... If you do select another attorney to defend you, we will reimburse you for the reasonable cost of such defense by the attorney that you select. If you agree to be defended by Attorneys Querrey & Harrow, Ltd., they will represent your interest only and will not act in the interest of this company where it may conflict with your interest. We have assured them and now assure you that we will make no effort to encroach upon the attorney/client relationship which they will have with you.

R. 387, Ex. 3.

7. Count I alleges that McGuffey's acts constituted an intentional interference with Littlefield's civil rights in connection with the leasing of real property, a violation of 42 U.S.C. § 1982. Count II alleges that he unlawfully discriminated in the renting of housing on the basis of race in violation of 42 U.S.C. § 3604. Count III alleges that the acts alleged constituted unlawful coercion, intimidation, threats, and interference with Littlefield's exercise and enjoyment of rights granted or protected under 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617. The fourth count, styled "Count III" and later dropped, alleges that McGuffey violated the Chicago Residential Landlord and Tenant Ordinance, Municipal Code of Chicago § 193.1–16 by changing the apartment locks and removing Littlefield's belongings. Count IV alleges intentional infliction of emotional distress under state common law. With the exception of the claim based on municipal law, all of the counts sought compensatory damages of $50,000 and punitive damages of $100,000.

occurred through negligence. Given the policy's intentional acts exclusion clause, no verdict conceivably could have resulted in one of two mutually exclusive outcomes that would have created the type of adversarial either/or circumstance described in *Maneikis.*[8] Regardless of whether McGuffey were found liable, it is difficult to imagine the circumstances in which State Farm would have to foot the bill for damages. Moreover, the company recognized that it could not be held accountable for the punitive damage claims and told McGuffey so in its letter. Since the obligation to pay for compensatory damages would seem to be an impossibility, there appears to be no *Nandorf*-type conflict in which counsel would lack the incentive to defend vigorously a suit seeking compensatory and punitive damages. Because all of the acts alleged in the complaint ostensibly could not escape the intentional acts exclusion provision, why State Farm believed that it might be responsible for any damages remains a mystery. In fact, State Farm's arguments on appeal directly contradict its assertions before the district court:

> Since any judgment against Malcolm McGuffey in case no. 88 C 9803 could only [sic] be predicated on intentional discriminatory acts by Mr. McGuffey and the jury entered a judgment not only for compensatory but punitive damages as well against Mr. McGuffey, Mr. McGuffey is guilty of intentional racial discrimination as a matter of law and State Farm has no duty to provide coverage for the judgment entered against him in case no. 88 C 9803.

R. 379, at 15–16.

■ The conflict of interest claimed by State Farm therefore seems quite illusory, if not nonexistent. In short, State Farm

seems to think that the possibility of liability exceeding coverage automatically triggered a conflict of interest. But as the cases discussed above indicate, the one is not the conceptual equivalent of the other. *See also Pepper Constr. Co. v. Casualty Ins. Co.,* 145 Ill.App.3d 516, 518, 99 Ill.Dec. 448, 449, 495 N.E.2d 1183, 1184 (1st Dist. 1986) ("Negation of coverage alone is not a sufficient conflict of interest to preclude an insurer from defending its insured."). In the absence of an actual conflict of interest, State Farm could not have availed itself of the exception to the general rule in Illinois requiring an insurer to take on the defense of its insured against claims which may not be covered by the policy, but which the insurer nevertheless has a right and duty to defend.

Moreover, the letter that State Farm cites to support its claim of nondefense is telling. It states, for instance, that "we specifically reserve our right to deny coverage to you (and anyone claiming coverage under the policy), for the following reasons". The letter then mentions the intentional acts exclusion, among others, as one justification for denial of coverage. R. 378, Ex. 3. The letter's explicit reference to a reservation of rights[9] as well as the apparent absence of conflict make it likely that State Farm not only paid for McGuffey's defense, but also actually defended him.

### III.

Because State Farm defended McGuffey, it must fulfill its obligations under the policy to pay for costs. Since costs include attorney's fees, the decision of the district court is AFFIRMED.

■

---

8. In addition, only Count IV alleges an actual tort action. *Maneikis* appears to require that a complaint allege a tort in order for "serious conflict" to materialize. *Id.* at 825.

9. One Illinois appellate court explains the rationale for a reservation of rights:

> The reservation of rights is a means by which the insurer seeks to suspend the operation of estoppel doctrines; when an insurer defends a

claim against its insured under a proper reservation of rights, the insured cannot then so easily claim that it was prejudiced by the insurer's conflict of interest.

*Royal Ins. Co. v. Process Design Assocs., Inc.,* 221 Ill.App.3d 966, 973, 164 Ill.Dec. 290, 295, 582 N.E.2d 1234, 1239 (1st Dist.1991) (citations omitted).