**IN THE**

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

_____

No. 09–2022

R.C. WEGMAN CONSTRUCTION COMPANY,

*Plaintiff-Appellant*,

v.

ADMIRAL INSURANCE COMPANY and BRIAN BUDRIK,

*Defendants-Appellees.*

_____

On Petition for Rehearing.

_____

FEBRUARY 4, 2011

_____

Admiral's petition for rehearing contends that we held that "where there is a possibility of a verdict in excess of policy limits, there is a conflict of interest between the insurer and the insured." This characterization ignores the facts that led us to find a conflict (actually just alleged facts, since the complaint was dismissed by the district court). We said that "the conflict in this case arose when Admiral learned that an excess judgment (and therefore a settlement in excess of the policy limits, as judgment prospects guide settlement) was a *nontrivial probability* in Budrik's suit" (emphasis added). Among the facts supporting that characterization were (1) the nature and severity of the

plaintiff's injury, (2) the settlement demand in excess of policy limits, (3) the fact that the case had been slated for trial (and in fact tried), (4) the plaintiff's securing at trial an award *double* the policy limit, (5) Admiral's admission that its primary litigating strategy was to downplay Wegman's responsibility rather than to deny liability, and (6) Admiral's failure to warn Wegman that it had adopted a strategy that placed Wegman in jeopardy of an excess judgment. Admiral's attorney has admitted taking a gamble by proceeding to trial in hopes of a ruling that Wegman's share of liability was below 25 percent, which would turn a $2 million damages award into a $500,000 award, well below Admiral's $1 million policy limit. Rather than being warned by Admiral, Wegman discovered that the case was going to trial only through an accidental conversation just days before the trial began.

The case is thus like *Nandorf, Inc. v. CNA Ins. Cos.*, *supra*, which involved a compensatory damages claim and a punitive damages claim; the insured wanted to minimize its total liability while the insurer sought to minimize merely the compensatory damages claim because its insurance policy didn't cover punitive damages. Admiral made a similar strategic move when faced with the likelihood of an excess judgment; instead of notifying Wegman and allowing it to negotiate its own settlement, or at least notify its excess-insurance carrier, Admiral's lawyer gambled on obtaining a reduction in damages, on the basis of Illinois's joint-and-several liability statute, that would bring the damages award against Wegman below Admiral's policy limit. Admiral's gamble created a conflict of interest that entitled Wegman to choose its own attorney to represent its interests, yet Admiral failed to warn Wegman of what it was doing. If Wegman can prove these allegations, it will have demonstrated a conflict of interest under Illinois insurance law

Of course the facts of *Nadorf* are not identical to the facts of this case, and this leads Admiral to argue that unless the facts of

a case are identical to those of a case decided by an Illinois court, a federal court sitting in diversity cannot find a conflict of interest because the conflict has not yet been "recognized" by Illinois case law. That is not correct. The role of the federal court in a diversity case is to predict how a court of the state whose law supplies the rule of decision would decide the case; *Nadorf* is relevant to that prediction.

DENIED.