# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Illinois Insurance Guaranty Fund v. Liberty Mutual Insurance Co.,**
**2013 IL App (1st) 123345**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS INSURANCE GUARANTY FUND, Plaintiff-Appellant, v. LIBERTY MUTUAL INSURANCE COMPANY, Defendant, and ZURICH AMERICAN INSURANCE COMPANY, and INTERLAKE MATERIAL HANDLING, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-12-3345 |
| Filed | November 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the workers' compensation benefits received by a loaned employee after the lending employer's workers' compensation insurer was liquidated, the trial court properly dismissed the action filed by the Illinois Insurance Guaranty Fund seeking reimbursement from the borrowing employer's workers' compensation insurer for the benefits the Fund paid to the injured worker after the liquidation, since the liquidated insurer had no rights against the borrowing employer's insurer that could have been passed to the Fund; furthermore, due to the passage of time, any action the liquidated insurer could have had against the borrowing employer's insurer would have expired. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-6510; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Locke Lord, LLP (Rowe W. Snider and Margaret M. Schuchardt, of counsel), and Stone & Johnson, Chtrd. (J. Murray Pinkston III, of counsel), both of Chicago, for appellant.

Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago (Brian A. O'Gallagher and Brandt W. Allen, of counsel), for appellees.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.
Justices Harris and Pierce concurred in the judgment and opinion.

## OPINION

¶ 1                                    I. INTRODUCTION

¶ 2      The circuit court correctly ruled in favor of the borrowing employer's insurance company on its motion to dismiss for failure to state a claim in an action brought by the Illinois Insurance Guaranty Fund (IIGF) seeking reimbursement from the borrowing insurance company for workers' compensation benefits IIGF paid to an injured worker after the insurance company for the lending employer that was obligated to make payments was liquidated. The additional defense of the expiration of the statute of limitations, as well as other defenses raised by the borrowing employer's insurance company, were also valid bases for dismissal.

¶ 3                                    II. BACKGROUND

¶ 4      Plaintiff, IIGF, was statutorily created in 1971 to provide protection for certain claims of policyholders under certain insurance policies issued by IIGF member companies that become insolvent. 215 ILCS 5/532 *et seq.* (West 2010). *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873, ¶ 1. This action concerns IIGF's efforts to attempt to be reimbursed for workers' compensation payments from a company that borrowed an employee after the insurance company for the employee's lending employer became insolvent.

¶ 5      IIGF's second amended complaint alleges John Earley (Earley) was hired by TGI Group on December 2, 2000. It further alleges that on December 19, 2000, Earley was performing work as a borrowed employee for Interlake Material Handling (Interlake) pursuant to a written contract between TGI Group and Interlake, although IIGF did not have any contract in its possession between TGI Group and Interlake. On that day, Earley was involved in a workplace accident which resulted in a workers' compensation claim. Earley's employer,

TGI Group, had a workers' compensation policy issued by Legion Insurance Company (Legion). Legion made certain workers' compensation payments to Earley on behalf of Earley's employer, TGI Group, until Legion's date of liquidation on July 28, 2003. IIGF stepped in and began paying Earley his workers' compensation benefits and continues to pay Earley to the present time.

¶ 6      On July 17, 2008, almost five years after it took over Earley's payments, IIGF filed its original complaint, which was amended on February 9, 2009. Almost three years after that, on January 19, 2012, IIGF filed a second amended complaint, which is the subject of this appeal. No allegations were made against the named defendant, Liberty Mutual Insurance Company, in the second amended complaint although IIGF named it in the caption. The second amended complaint sought reimbursement from defendants Zurich American Insurance Company (Zurich) and Interlake under a workers' compensation policy Zurich issued to Interlake, Earley's alleged borrowing employer on the date of the accident. Specifically, IIGF sought reimbursement for all workers' compensation payments IIGF had made to Earley, reimbursement for IIGF's defense in Earley's workers' compensation claim, and a judgment that Zurich is responsible for all workers' compensation benefits payable to Earley in connection with the injuries Earley sustained on December 19, 2000.

¶ 7      IIGF further alleged in the second amended complaint that both Earley's presumed lending employer, TGI Group, and his borrowing employer, Interlake, are jointly and severally liable for Earley's workers' compensation benefits. It further alleged that the Zurich policy issued to Interlake is "other insurance" as that term is defined under the Illinois Insurance Code (215 ILCS 5/546(a) (West 2010)) and is, therefore, primary coverage that must be exhausted before IIGF becomes responsible to Earley for any payments.

¶ 8      Zurich filed a combined motion to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619 (West 2012). Zurich's motion to dismiss pursuant to section 2-615 asserted that IIGF's second amended complaint was replete with conclusory statements rather than allegations of fact. Specifically, Zurich cites to (1) IIGF's failure to adequately allege the identity of Earley's employer, (2) IIGF's failure to adequately allege a borrowing employer relationship, (3) IIGF's failure to cite any statutory basis for the relief it seeks, and (4) IIGF's failure to even mention the word "subrogation" or any subrogation rights it might have or its basis to maintain such a claim. The basis for Zurich's section 2-619 motion to dismiss was that IIGF's second amended complaint was untimely as against Zurich because Zurich was not added as a defendant until the filing of IIGF's first amended complaint of February 9, 2009, more than six years after any claim accrued.

¶ 9      On June 1, 2012, the circuit court ruled that IIGF did not plead a subrogation claim in its second amended complaint. The circuit court further noted that IIGF's brief in opposition to dismissal made clear that IIGF's request for reimbursement is a claim for subrogation and the second amended complaint failed to plead facts to support the elements of such a claim. The court further noted that IIGF did not argue in its response to Zurich's motion to dismiss that it could assert facts to support a subrogation claim if it was given leave to amend its complaint yet a third time. Therefore, it dismissed the second amended complaint with prejudice. The circuit court ruled that other arguments made by Zurich in its motion to dismiss were moot because the second amended complaint was dismissed for failure to state

a claim. On July 2, 2012, IIGF filed a motion for reconsideration.

¶ 10    On October 11, 2012, the circuit court ruled on IIGF's timely filed and fully briefed motion for reconsideration. It stated that IIGF violated the purpose of a motion for reconsideration, which is to apprise the court of newly discovered evidence or a change in the law or errors in the court's earlier application of the law. Because IIGF's motion for reconsideration accomplished none of these purposes, the circuit court denied IIGF's motion.

¶ 11    IIGF filed a timely notice of appeal from the circuit court's adverse decision on November 9, 2012. Ill. S. Ct. R. 303(a) (eff. June 4, 2008).

¶ 12                            III. STANDARD OF REVIEW

¶ 13    The appellant, IIGF, did not submit a standard of review in its appellate brief as is required by the rules. Rule 341(h)(3) states that "[t]he appellant *must* include a concise statement of the applicable standard of review for each issue, with citation to authority." (Emphasis added.) Ill. S. Ct. R. 341(h)(3) (eff. Feb. 6, 2013). The defendant-appellee, Zurich, submits that this case should be reviewed *de novo*, but failed to cite any cases in support of its submission.

¶ 14    We note that the question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Hough v. Kalousek*, 279 Ill. App. 3d 855, 862 (1996). Illinois is a fact-pleading jurisdiction that requires a plaintiff to file both a legally and factually sufficient complaint. *Id.* at 863. When ruling on a section 2-615 motion to dismiss, the circuit court must admit all well-pleaded facts as true and disregard any legal and factual conclusions that are unsupported by allegations of fact. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 456-57 (1995). The standard of review on a section 2-615 dismissal is *de novo*. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083-84 (1994).

¶ 15    Additionally, Zurich's motion to dismiss was brought pursuant to section 2-619. 735 ILCS 5/2-619 (West 2012). All well-pleaded facts and reasonable inferences are accepted as true by the circuit court when ruling on a section 2-619 motion to dismiss. *In re Marriage of Sullivan*, 342 Ill. App. 3d 560, 562 (2003). Conclusions of law are not accepted as true. *Id.* at 563. "A reviewing court should conduct an independent review of the propriety of dismissing the complaint and is not required to defer to the trial court's reasoning." *Id.* The standard of review for a dismissal based on section 2-619 motion is also *de novo*. *In re Marriage of Morreale*, 351 Ill. App. 3d 238, 240 (2004). Therefore, this court will look at this entire case *de novo*.

¶ 16    We also note that this court can affirm the circuit court's dismissal on any grounds supplied by the record and applicable case law, regardless of the circuit court's reasons. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10.

¶ 17                                IV. ANALYSIS

¶ 18    "Subrogation has been defined as the substitution of another *** in the place of a

claimant whose rights [it] succeeds to in relation to the debt or claim asserted, which [it] has paid involuntarily." *Wausau Insurance Co. v. All Chicagoland Moving & Storage Co.*, 333 Ill. App. 3d 1116, 1121 (2002). The purpose of a subrogation claim is traditionally grounded in equity to work out an adjustment between the parties "by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." 16 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 222:8 (3d ed. 1997).

¶ 19    In this case, to establish a valid cause of action of equitable subrogation, IIGF must allege the following: (1) that the named defendant insurer, Zurich, is primarily liable to the insured for the injured worker's loss under its workers' compensation policy; (2) that IIGF, through an assignment from Legion, is secondarily liable to the injured employee for the same loss under Legion's policy; and (3) that IIGF discharged its liability to the insured and, in doing so, extinguished the liability of Zurich. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 316-17 (2004).

¶ 20    Our supreme court has held that an insured, such as Legion, by its conduct may waive rights against another insurer, such as Zurich. *Id.* at 327. It explained that an insurer, such as Legion, desiring to reserve any rights it may have against a second insurer must make this position clear in its correspondence with the insurance company it may believe to be another insurer. *Id.* There are no allegations in IIGF's second amended complaint that Legion believed that Zurich or Interlake was in any way responsible to TGI Group or Legion for its employee's injuries. There are no allegations in the complaint that Legion believed it had any valid claim against either Zurich or Interlake to seek a full reimbursement for the amounts it paid out under its workers' compensation insurance policy it had with TGI Group. Our supreme court has held that any insurer, like Legion, is "presumed to know the contents of its own policy" and whether any other insurance company must assume or share in the liability. *Id.*

¶ 21    IIGF is statutorily obligated to provide workers' compensation coverage for the injured employee in the event Legion became insolvent, which it did. *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, ¶ 4; see generally *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873. IIGF argues it can relieve its obligation by pursuing another insurance company that provided workers' compensation coverage to the injured employee's borrowing employer, regardless of passage of time and lack of actions by the primary insurer, Legion, at the time liability was established.

¶ 22    Aside from a legal conclusion alleged by IIGF in its second amended complaint that both Legion and Zurich are jointly and severally liable to the injured employee, there are no factual allegations in IIGF's second amended complaint that satisfy the first element of a subrogation claim–that the defendant Zurich is legally responsible to compensate the injured employee for his injuries. More importantly, there are no factual allegations that Zurich is primarily liable for the loss rather than Legion, the insurance company which was paying on the claim prior to its insolvency. In order for IIGF to have a valid, timely cause of action sounding in subrogation, Legion must have had an existing cause of action against Zurich that Legion could have asserted for its own benefit had IIGF not compensated the injured employee for his loss by continuing to pay his workers' compensation benefits. There are no factual or legally sound allegations in IIGF's second amended complaint that describe the

situation where IIGF fulfilled an existing legal obligation that Zurich had to pay the workers' compensation benefits to the injured employee and, as a result, has a right to reimbursement from Zurich. In fact, IIGF made the conclusory allegation that it was under a statutory compulsion to continue workers' compensation payments to the injured employee for the insolvent insurance company Legion, not to fulfill any legal obligations on behalf of Zurich. Without such factual and legal allegations in IIGF's complaint, IIGF fails to state a claim and cannot proceed against Zurich as subrogee of Legion.

¶ 23    IIGF argues that by taking over Legion's obligation to pay the injured employee's workers' compensation benefits, it was automatically assigned any rights Legion had to pursue the amounts IIGF paid directly from Zurich. It argues that any other insurance policy in existence at the time of the injury is fair game as Zurich's equitable position is inferior to that of IIGF. The relevant question here is whether Legion had any existing, assignable causes of action against Zurich on the date IIGF filed its complaint naming Zurich. Given the facts of this case, we hold that Legion had no assignable rights against Zurich it could have passed onto IIGF when it became insolvent. Given the passage of time, any applicable statute of limitations for any cause of action, equitable or legal, that Legion could have possibly had against Zurich has expired. The employee was injured on December 18, 2000, then IIGF took over payments on July 28, 2003, but IIGF did not file suit against Zurich until February 9, 2009.

¶ 24    IIGF argues that the statutory framework created by both the Insurance Code (215 ILCS 5/532 *et seq.* (West 2010)) and the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)) requires that when a workers' compensation carrier for a lending employer that is paying for an injury for its employee becomes insolvent, the workers' compensation carrier for the employer that borrowed the employee on the date the employee was injured must begin paying the workers' compensation benefits to the lending employer's injured employee before IIGF is required to pay. In presenting this argument in its opening brief, IIGF ignores this court's ruling in *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, which held that when a lending employer maintains workers' compensation insurance for its employees and the workers' compensation carrier becomes insolvent, IIGF cannot compel the borrowing employer's insurance carrier to pay the lending employee's benefits. *Id.* ¶ 22.

¶ 25    Aside from failing to distinguish the instant case from the *Virginia Surety* holding, *supra*, IIGF's theory that it is entitled to reimbursement fails to focus on the most basic issue of who is really the insured for both Legion and Zurich and how the relationship, if any exits at all, between the two insurance carriers and how IIGF's subrogation claim for reimbursement depends on IIGF's ability to establish that Zurich is a primary insurer. IIGF's second amended complaint contains unsupported assertions regarding to whom Legion owed coverage, none of which include Zurich's insured, Interlake. There is no allegation that Zurich contracted with Legion's client. In fact, Legion's client was never definitively identified by IIGF.

¶ 26    Generally, when an action is brought for reimbursement, it involves an insurance carrier claiming to be an excess insurer who is suing a primary insurer. In that circumstance, both the excess carrier and primary carrier must have contracted with the same insured. See

Thomas M. Hamilton & Troy A. Stark, *Excess-Primary Insurer Obligations and the Rights of the Insured*, 69 Def. Couns. J. 315 (2002) ("[i]n a typical excess-primary relationship, both the excess and primary carrier[s] contract independently with the policyholder to perform the obligations of their insuring agreements"). In the instant case, IIGF is attempting an action for reimbursement brought on behalf of the now-insolvent Legion insurance company against another insurance company, Zurich, but the policies cover different insureds. Such a claim cannot be based on the doctrine of reimbursement (the only recovery request IIGF makes in its second amended complaint) between excess and primary insurers. Instead, such an action would require IIGF to allege a right of indemnity based on the doctrine of *respondeat superior* or based on the right of joint tortfeasors to recover from each other. *Bituminous Casualty Corp. v. American Fidelity & Casualty Co.*, 22 Ill. App. 2d 26, 32 (1959); 15 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 217:16 (3d ed. 1997) (an action may be brought by an insurer who was compelled to pay a claim on behalf of its insured even though its insured bore only vicarious liability); Russ & Segalia, *supra* § 217:4 (there may be a right to contribution where an insurer of a joint tortfeasor has paid more than its fair share of the loss).

¶ 27    It is not disputed that Zurich's policy covered only Interlake, and not TGI Group or anyone else Legion may have insured for workers' compensation claims. Therefore, Legion's policy with its insured (TGI Group) cannot form the basis of a cause of action for reimbursement against Zurich's insured party. At the time of the employee's injury, there is no allegation that the insurance companies contested that Legion's insured was legally responsible for the employee's injuries and, therefore, covered by Legion's policy alone.

¶ 28    If Legion's policy were a true excess insurance policy, it would explicitly require the existence of a primary policy as a condition of coverage. 15 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 220:2 (3d ed. 1997). IIGF does not allege that Legion is an excess insurance carrier as it fails to allege that Legion's policy had any such condition. Instead, IIGF appears to assert that it has a status as an excess insurer, regardless of what status it inherited from Legion, based upon the "other insurance" clause contained in its enabling statute which outlines IIGF's obligation when two or more insurance policies are available. The portion of the statute IIGF relies on for its argument states as follows:

"An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, *** if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund. The Fund's obligation *** shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy." 215 ILCS 5/546(a) (West 2010).

This clause does not establish IIGF's status as excess over all other insurers and does not support IIGF's argument that the statute converts Zurich's insurance as primary over IIGF's funds. *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758; Douglas R. Richmond, *Rights and Responsibilities of Excess Insurers*, 78 Denv. U. L. Rev. 29, 103 (2000). There is no allegation that Zurich was a primary insurance carrier in the facts of this case. The language in IIGF's enabling statute cannot alter the terms of Zurich's insurance policy by inserting a new insured and converting the policy into a primary one for that new insured.

¶ 29    Another issue raised by IIGF is that IIGF now has Legion's right to recover from its co-obligor, Zurich, which shares the same liability under a theory of equitable contribution. *Fireman's Fund Insurance Co. v. Maryland Casualty Co.*, 77 Cal. Rptr. 2d 296, 303 (Cal. Ct. App. 1998). However, this is not a case where multiple insurance carriers insured the same insured and covered the same risk. It is only in that situation where an insurance company has standing to allege a cause of action for equitable contribution against what is, by definition, its co-insurers for equitable contribution because it has indemnified them by undertaking the defense or paying on the claim. *Id.* A fair reading of IIGF's second amended complaint does not encompass the doctrine of equitable contribution.

¶ 30    Finally, as a matter of policy, the recognition of IIGF's theory of recovery would undermine current established insurance law, which governs both equitable subrogation and workers' compensation law as it applies to a lending employer/borrowing employer relationship. If IIGF were able to recover from Zurich under the "other insurance" clause of its enabling statute, then all the existing laws regarding how workers' compensation laws apply to these employers would be circumvented, and IIGF would be able to obtain reimbursement from an insurance company for monies IIGF paid out to an injured employee without the required statements by the insolvent insurer, Legion, that it had a good-faith belief that Zurich had a duty and obligation to share in the coverage. Because IIGF failed to allege Legion's compliance with its obligation to fulfill a condition precedent of properly asserting a claim with Zurich, it has failed to state a claim for relief. In other words, IIGF's argument that Zurich is "other insurance" that it can recover from must fail because Legion did not comply with any conditions precedent to triggering coverage, including notifying Zurich it believed it should provide primary coverage or share in coverage. 15 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 219:9 (3d ed. 1997) (a policy that never comes into effect because certain preconditions are never met is not valid and collectible "other insurance"). A basic precondition, at a minimum, would be to file a lawsuit before the statute of limitations expires. *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 324-329 (1998). IIGF makes no such claim of notice to Zurich of a claim against it within the statute of limitations. This additional omission by IIGF is further support of the circuit court's dismissal of IIGF's second amended complaint for failure to state a claim.

¶ 31    IIGF never uses the word "subrogation" in its second amended complaint, nor does it identify the parties as subrogee and subrogor. IIGF's argument is that although its second amended complaint does not specifically identify the claim with the word "subrogation," it argues that it contains the elements of such a claim. This court disagrees and holds, for all the foregoing reasons, that IIGF's second amended complaint fails to allege the elements necessary for a subrogation claim. Therefore, IIGF cannot proceed against Zurich as the subrogee of the primary insurance company covering the workers' compensation claim, Legion, which became insolvent.

¶ 32                                    V. CONCLUSION

¶ 33    For all the foregoing reasons, this court affirms the circuit court order that IIGF's claim be dismissed for failure to state a claim. This court also finds that any applicable statute of

limitations expired and Zurich's policy is not "other insurance" available to IIGF to pursue for reimbursement.

¶ 34      Affirmed.