# Illinois Official Reports

## Appellate Court

---

*Huang v. Brenson*, 2014 IL App (1st) 123231

---

| | |
|---|---|
| Appellate Court Caption | JOHN Z. HUANG, Individually, and JOHN Z. HUANG, P.C., Plaintiffs-Appellants, v. IAN BRENSON, Individually, and THE LAW OFFICES OF IAN BRENSON, Defendants-Appellees. |
| District & No. | First District, Third Division <br> Docket No. 1-12-3231 |
| Filed | March 5, 2014 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a legal malpractice action against defendants who represented plaintiffs in an underlying legal malpractice action, the dismissal of plaintiffs' claims was affirmed, since plaintiffs lost the underlying malpractice action against them because of the intervening misapplication of the law by the trial court in that action, not the malpractice of plaintiffs' counsel, plaintiffs were vindicated on appeal due to counsel's preservation of the issue of noneconomic damages in the underlying malpractice action, plaintiffs' counsel did not proximately cause plaintiffs' damages, and plaintiffs failed to plead that defendants breached any fiduciary duty by failing to tell plaintiffs of settlement demands made in the underlying malpractice action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-14082; the Hon. Randye A. Kogan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jenna M. Smith, of John Z. Huang & Associates, of Chicago, for appellants.

Jason M. Kuzniar and Lauren M. Kim, both of Wilson, Elser, Moskowitz, Edelman & Dickler LLP, of Chicago, for appellees.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

# OPINION

¶ 1    Plaintiffs, a lawyer and his firm, brought this legal malpractice claim against the lawyer who defended him in a legal malpractice claim brought by a former client. In the original case, plaintiffs' professional liability insurer retained defendants Ian Brenson and the Law Offices of Ian Brenson (collectively, Brenson) to represent plaintiffs John Z. Huang and his firm John Z. Huang, P.C. (collectively, Huang). The former client prevailed against Huang. (Ultimately, that judgment was reversed on appeal.) Huang's legal malpractice case against Brenson was dismissed, and this appeal followed.

¶ 2    We hold that Huang failed to plead facts that establish a cognizable claim, and, therefore, we affirm.

¶ 3                          BACKGROUND

¶ 4    Yongping Zhou, a Chinese citizen, was convicted in 1998 of domestic violence. He received a one-year suspended sentence. As a result, in early 2001, the Immigration and Naturalization Service (INS) detained Zhou and served him with a notice of intent to deport to China, giving 10 days to rebut the charges and contest the deportation. Through a friend, Zhou retained Huang, an immigration lawyer, to represent him in the INS proceedings. Huang represented Zhou from February 2001 until June 2001, when Zhou terminated the relationship and retained another attorney.

¶ 5    The new attorney represented Zhou in the INS proceedings. After hearing Zhou's testimony, the judge denied Zhou's request for asylum and rejected his torture and persecution claims. Zhou hired several more attorneys before he was able to have his conviction for domestic violence vacated. After spending two years in prison, Zhou was released on bond in 2003 from INS detention.

¶ 6    In May 2003, Zhou sued Huang for legal malpractice. Zhou's amended complaint alleged that Huang acted negligently, and he sought damages for emotional distress, physical abuse,

isolation, humiliation, pain and suffering, loss of education, and loss of income. Huang's professional liability insurer retained Brenson to represent Huang.

¶ 7    Five years later, Brenson moved for summary judgment on Huang's behalf, arguing that Zhou could not recover noneconomic damages in a legal malpractice action. The circuit court denied that motion and set the matter for a jury trial. Before trial, Brenson moved *in limine* to exclude evidence of noneconomic damages, which the judge denied as well. During the three-week trial, Zhou only presented evidence on damages for emotional distress, loss of normal life, psychological damages, and the cost of future psychological care–damages that are all noneconomic in nature. Brenson argued that the jury should be instructed that it could not award damages based on noneconomic injury, but the trial judge declined the instruction. The jury awarded Zhou $4 million.

¶ 8    After the trial, Huang terminated Brenson and hired two new attorneys for posttrial and asset discovery proceedings: one paid for by his insurer, and the other Huang paid. The trial court granted a remittitur and reduced Zhou's judgment to $1 million, which Zhou rejected. Huang then moved for judgment *n.o.v.* and for a new trial. The judge denied the motion, and both Zhou and Huang appealed.

¶ 9    In that appeal, Huang argued that the trial court erred in allowing Zhou to recover nonpecuniary damages. The appellate court agreed, holding that Zhou was "prohibited from recovering damages for emotional distress in the instant action." *Zhou v. John Z. Huang, P.C.*, No. 1-08-2807 (2010) (unpublished order under Supreme Court Rule 23). The court reversed and remanded with instructions to enter judgment *n.o.v.* in favor of Huang and his firm. The supreme court denied Zhou's petition for leave to appeal. *Zhou v. John Z. Huang, P.C.*, 239 Ill. 2d 592 (2011) (table).

¶ 10   In December 2010, Huang filed this case in the circuit court, alleging Brenson committed legal malpractice while defending the Zhou malpractice case. Huang's second amended complaint contained 10 counts, including 8 counts alleging "negligence/legal malpractice" on the following grounds:

- Brenson negligently conducted discovery, causing Huang to be unprepared for his deposition (count I);
- Brenson failed to communicate with Huang for eight months, contributing to Huang's being unprepared at trial (count II);
- Brenson failed to procure an expert for trial (count III);
- Brenson failed to depose or call as witnesses the immigration judge, INS officers, Zhou's former wife, or other attorneys who represented Zhou in the immigration proceeding (count IV);
- Brenson failed to advise Huang of the possibility of a multimillion dollar verdict (count VII);
- at trial, Brenson failed to introduce key documents into evidence (count VIII);
- at trial, Brenson failed to object to inadmissible evidence (count IX); and
- Brenson failed to move the case forward in a timely manner, leaving it pending in the circuit court for five years (count X).

¶ 11   Huang also filed claims for breach of fiduciary duty. In count V, Huang alleged that Brenson concurrently represented Huang and the professional liability insurance company,

and, as a result, failed to relay several of Zhou's settlement offers to Huang. Similarly, in count VI, Huang alleged that Brenson breached his fiduciary duty of loyalty by failing to relay Zhou's settlement offers. He sought damages of $154,855 for attorney fees paid to the posttrial and appellate counsel.

¶ 12    Brenson moved to dismiss the second amended complaint, which the trial court granted. Dismissed with prejudice were most of the legal malpractice claims (counts I, II, III, IV, VIII, IX, and X). The circuit judge reasoned that Brenson could not be held responsible for a judicial mistake that required an appeal to correct. The court further dismissed counts V, VI, and VII without prejudice because Huang did not allege that his insurer was willing to settle the case, or that he could settle the case on his own.

¶ 13    Huang repleaded counts V, VI, and VII in a fourth amended complaint. Brenson again moved to dismiss, and, again, the circuit judge dismissed. The trial court held that the fourth amended complaint failed to "adequately allege that Huang had the authority to demand his insurance company settle, and that Lloyd's [the insurer] would have paid the demand."

¶ 14    Huang now appeals the dismissal of the second and fourth amended complaints.

¶ 15                          STANDARD OF REVIEW

¶ 16    We review motions to dismiss under sections 2-619 and 2-615 of the Code of Civil Procedure *de novo*. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 16; 735 ILCS 5/2-615, 2-619(a) (West 2008). Accordingly, we may affirm or reverse on any basis found in the record. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 17    Dismissal is proper under section 2-615 when it is clear that the plaintiff has not pled a set of facts that would entitle it to relief. *Central Austin Neighborhood Ass'n v. City of Chicago*, 2013 IL App (1st) 123041, ¶ 8. Opposition to a section 2-615 motion cannot rely on mere conclusions of law unsupported by specific factual allegations. *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 13. Though, for the purposes of the motion, well-pleaded factual allegations and reasonable inferences are treated as true. *Illinois Insurance Guaranty Fund v. Liberty Mutual Insurance Co.*, 2013 IL App (1st) 123345, ¶ 14.

¶ 18    A motion under section 2-619 admits the legal sufficiency of the pleading, but asserts affirmative matter. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). These motions dispose of issues of law and easily proved issues of fact early in the litigation. *Id.* Construing the pleadings and supporting documents in the light most favorable to the nonmoving party, we consider whether the existence of a genuine issue of material fact precluded dismissal. *Id.*

¶ 19                               ANALYSIS
¶ 20                   Forfeiture of Issue of Proximate Cause
¶ 21    Brenson argues that Huang forfeited the issue of proximate cause by not raising it in the trial court. We disagree.

¶ 22    Failure to raise an issue in the trial court generally results in forfeiture of that issue on appeal. *Fillmore v. Walker*, 2013 IL App (4th) 120533, ¶ 27. Issues raised on appeal must be at least "commensurate with" those raised before the trial court. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 509 (1988). Here, Brenson raised the issue of proximate cause in the motion to dismiss the second amended complaint, and Huang argued in

response that the trial judge's mistake in *Zhou* did not excuse Brenson's negligence. Huang's responsive briefing was sufficient to preserve the issue for our review. Accordingly, Huang did not forfeit the proximate cause issue.

¶ 23                                    Legal Malpractice

¶ 24    Huang argues that the trial court erred in ruling that Brenson did not proximately cause Huang's damages. We disagree.

¶ 25    The elements of a cause of action for legal malpractice are: (i) the defendant attorney owed the plaintiff client a duty of due care arising from an attorney-client relationship; (ii) the attorney breached that duty; (iii) the client suffered an injury in the form of actual damages; and (iv) the actual damages resulted as a proximate cause of the breach. *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 28. A legal malpractice plaintiff may recover as actual damages the attorney fees proximately caused by the defendant's malpractice, "so long as the plaintiff can demonstrate she [or he] would not have incurred the fees in the absence of the defendant's negligence." *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753 (2008).

¶ 26    There are two tests of proximate cause. Under the traditional "but for" test, a plaintiff must plead facts establishing that, but for the attorney's malpractice, plaintiff would have prevailed in the underlying action. *Estate of Powell v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 29. Under the other test, the "substantial factor" test, the plaintiff must show that the defendant's negligence was a material element and a substantial factor in bringing about the injury. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 355 (1992).

¶ 27    Proximate cause further requires a showing of legal cause, that is to say, foreseeability. The defendant's actions are the legal cause of the plaintiff's injury where a reasonable person in the defendant's position could foresee the plaintiff's injury as a likely result of the defendant's conduct. *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*, 2012 IL App (2d) 110718, ¶ 62. Proximate cause is generally an issue for the trier of fact, and should not be decided as a matter of law unless the facts are undisputed and reasonable persons could not differ in the result. *Nettleton v. Stogsdill*, 387 Ill. App. 3d at 753.

¶ 28    "Where there are successive negligent actors, however, the negligence of the second actor, under certain circumstances, may be deemed a superceding cause–relieving the original negligent actor of liability, as a matter of law." *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 979 (2005). "A foreseeable intervening cause does not break the chain of legal causation and to avoid liability, a defendant must show that the intervening event was unforeseeable as a matter of law. [Citation.] Where varying inferences are possible, foreseeability is a question of fact for the jury." *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 79. An attorney should not be held liable for malpractice where a judge's "misapplication of the law served as an intervening cause." *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 176 (2004).

¶ 29    In *Cedeno v. Gumbiner*, the plaintiff client's deceased mother was injured while exiting a bus. *Cedeno*, 347 Ill. App. 3d at 170. She retained defendant attorney who referred the case to another defendant attorney. *Id.* The second attorney sent the Chicago Transit Authority (CTA) the required notice of claim for personal injuries, but the notice had the wrong date of injury. *Id.* The client discharged the second attorney and retained a third, who filed a complaint in the

circuit court against the CTA. *Id.* at 170-71. Eventually the CTA moved for summary judgment, asserting that the date on the notice was incorrect and invalidated the client's claim. *Id.* at 171 (citing 70 ILCS 3605/41 (West 1998)). This notice requirement was later eliminated. See Pub. Act 96-12 (eff. June 1, 2009) (amending 70 ILCS 3605/41).

¶ 30        The circuit court erroneously granted the CTA summary judgment, and the third attorney timely filed a notice of appeal. *Cedeno*, 347 Ill. App. 3d at 171. Eventually that appeal was dismissed for want of prosecution. *Id*. The client filed a legal malpractice action, alleging that her first and second attorneys (but not the third) were negligent in issuing a defective written notice of the accident. *Id*. The attorneys moved for and were granted summary judgment, and the appellate court affirmed. *Id*. Regarding causation, the panel noted that if "the underlying cause remained actionable upon the discharge of the former attorney, plaintiff can prove no set of facts which connect defendant's conduct with any damage plaintiff sustained." *Id*. at 174. Because the client's claim was "actionable after defendants' discharge, and the circuit court's misapplication of the law served as an intervening cause, it cannot be said that plaintiff's damages proximately resulted from defendants' Notice." *Id.* at 176.

¶ 31        Huang asserts that, but for Brenson's negligence in preparing for and trying his case, Huang would not have had to procure posttrial and appellate counsel to correct Brenson's mistake. In support, Huang cites *Nettleton v. Stogsdill*. There, the defendant attorney represented the plaintiff client during her dissolution of marriage petition. *Nettleton*, 387 Ill. App. 3d at 745. One day before the trial on the petition, the attorney requested a continuance due to his being engaged in another trial at the same time. *Id*. The trial court denied the motion, and at trial, the attorney again moved for a continuance. *Id.* at 745-46. The trial court granted a two-day continuance. *Id.* at 746. At the next trial date, the attorney moved to voluntarily nonsuit the dissolution petition, which the trial court denied on the basis of improper notice. *Id*. The attorney then called the client to the stand, asked her to state and spell her name, and then rested the case. *Id*. The trial court held that the client had failed to prove her case and dismissed her petition. *Id*.

¶ 32        The client filed suit against the attorney alleging malpractice in failing to prepare for the trial on the original petition. *Id.* at 746-47. The trial court granted summary judgment in favor of the attorney, holding that the plaintiff failed to prove her damages were proximately caused by the attorney's negligence. *Id.* at 747. The appellate court disagreed, holding in part that a genuine issue of material fact precluded summary judgment. *Id.* at 754. Specifically:

> "[A] reasonable person could conclude that defendants were the proximate cause of at least some of plaintiff's attorney fees. We acknowledge, as the trial court did, that 'divorces continue for all kinds of reasons' and that many factors, such as 'decisions that [plaintiff] made regarding counsel, regarding what to accept, what not to accept, how much maintenance that she wanted and her feelings,' may have contributed to the lengthy duration of the second dissolution proceeding and, thus, perhaps not all of plaintiff's attorney fees were proximately caused by defendants' alleged malpractice. We hold, however, that *how much of plaintiff's attorney fees was attributable to defendants' alleged malpractice versus how much was attributable to other factors presented a genuine issue of material fact warranting a denial of the motion for summary judgment*." (Emphasis added.) *Id*.

¶ 33     The issue is proximate cause. To prevail, a plaintiff must plead facts showing that, but for defendant's acts of alleged malpractice, the plaintiff would not have incurred additional attorney fees after trial and on appeal. In his second amended complaint, Huang alleged that Brenson was negligent in his representation during pretrial discovery, in preparing for trial, and at the trial itself. Huang essentially alleges that he should have won at trial and did not win because of Brenson's negligence. But, as was the case in *Cedeno*, Huang's case remained viable "after defendants' discharge and the circuit court's misapplication of the law served as an intervening cause." *Cedeno*, 347 Ill. App. 3d at 176. Not only did it remain viable, but Huang was vindicated on appeal as a result of Brenson's efforts to preserve the damages issue in the trial court.

¶ 34     Unlike the client in *Nettleton*, Huang cannot attribute damages to Brenson's failure at trial. In malpractice cases like this one, which turn on the attorney's conduct during litigation, "a plaintiff must generally prove a case-within-a-case to establish proximate cause." *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 343 (2010). For the case-within-a-case, as a matter of law, in *Zhou v Huang*, the trial court should have granted Huang summary judgment or a directed verdict on all of Zhou's claims for damages. Huang does not contend that Brenson in any way contributed to the trial court's error. See *Skinner v. Stone, Raskin & Israel*, 724 F.2d 264, 266 (2d Cir. 1983) ("unless the trial court's mistake was a superseding rather than a contributing cause of the defective default judgment, [the attorneys] may be held liable if their negligence was a proximate contributing cause"). Thus, the trial court's error acted as an intervening cause, relieving Brenson's alleged negligence. See *Cedeno*, 347 Ill. App. 3d at 175-76; *Crestwood Cove Apartments Business Trust v. Turner*, 2007 UT 48, ¶ 33, 164 P.3d 1247 ("summary judgment is appropriate where there is no doubt that judicial error, rather than attorney malpractice, caused a client's losses").

¶ 35     Citing *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195 (2006), Huang further argues that the issue of proximate cause should not have been decided as a matter of law. In that case, the plaintiff, Kendall County, Illinois, and its insurer retained the defendant attorneys in a personal injury suit. *Governmental Interinsurance Exchange*, 221 Ill. 2d at 201-02. The attorney moved for summary judgment, arguing that the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2010)) immunized the county from liability. *Governmental Interinsurance Exchange*, 221 Ill. 2d at 201-02. The trial court denied the motion for summary judgment, and at trial the jury returned a verdict against the county. *Id.* The attorney appealed on behalf of the county, but failed to perfect the appeal on the merits. *Id.* at 202-04.

¶ 36     The county and its insurer filed suit against the attorney alleging appellate malpractice. The circuit court granted summary judgment to the attorneys on the issue of proximate cause, and the appellate and supreme courts affirmed. *Id.* at 209, 221. Our supreme court reasoned in part that "the issue of proximate cause in an appellate legal malpractice action presents a question of law for the court and not a question of fact for a jury." *Id.* at 212.

¶ 37     The case before us does not involve appellate malpractice, and is therefore distinguishable from *Judge*. Moreover, proximate cause may be determined as a matter of law where (i) the facts are undisputed, and (ii) there can be no difference in the judgment of reasonable persons as to the inferences that may be drawn from the facts. *Nettleton v. Stogsdill*, 387 Ill. App. 3d at 753 (citing *Public Taxi Service, Inc. v. Barrett*, 44 Ill. App. 3d 452, 456 (1976)). Brenson

raised no factual dispute in his motion to dismiss, and Huang points to no inferences that give rise to a dispute regarding proximate cause, such as occurred in *Nettleton*, 387 Ill. App. 3d at 754. Accordingly, the circuit court did not err in deciding Brenson did not proximately cause Huang's damages as a matter of law.

¶ 38                                                    Estoppel

¶ 39        In his reply brief, Huang assert that Brenson should be estopped from relying on the work of the posttrial and appellate attorneys, citing *Kohler v. Woollen, Brown & Hawkins*, 15 Ill. App. 3d 455 (1973), in support. *Kohler* is distinguishable. In *Kohler*, the attorneys, who represented two estates against the decedents' insurance company, procured an arbitration award against the insurance company, which the circuit court vacated on the grounds that the demand for arbitration was not filed within two years from the death of the decedents. *Id*. at 457. In the circuit court, the appellate court, and in a petition for leave to appeal to the supreme court, the attorney asserted the validity of the arbitration awards. *Id.* at 458. Later, in the malpractice case, the attorney tried to deny the validity of those awards, and the appellate court held that they were estopped from doing so. *Id.*

¶ 40        The *Kohler* case is an example of judicial estoppel.

> "The doctrine of judicial estoppel promote[s] the truth and *** protect[s] the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment. [Citation.] Judicial estoppel is flexible but five elements are generally necessary: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit; and (5) the two positions must be totally inconsistent. [Citation.] Judicial estoppel applies to statements of fact and not to legal opinions or conclusions." (Internal quotation marks omitted.) *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 59 (quoting *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 35).

¶ 41        Judicial estoppel is inapplicable because Huang has not asserted or shown any of the elements of judicial estoppel, and defendants do not assert any factual position in this litigation that is contrary to a position taken in the underlying case.

¶ 42                                          Breach of Fiduciary Duty

¶ 43        Huang argues that the trial court erred in holding that he failed to plead facts showing a conflict of interest. Huang notes that Brenson's affidavit attached to the motion to dismiss stated, "I was retained by [plaintiffs] and their liability insurance carrier to defend them in [Zhou's] lawsuit." Huang contends this statement was a judicial or evidentiary admission that Brenson had a conflict of interest. We agree that plaintiffs pleaded the existence and breach of a fiduciary duty, but hold that they did not plead facts showing defendants' breach proximately caused any damage.

¶ 44        To establish a claim for breach of fiduciary duty, the plaintiff must allege: (i) the existence of a fiduciary duty; (ii) the breach of that duty; and (iii) damages proximately caused by the breach. *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 73. Attorneys have a fiduciary duty

to their clients. *Brush v. Gilsdorf*, 335 Ill. App. 3d 356, 360 (2002). "The fiduciary duty owed by an attorney to a client encompasses the obligations of fidelity, honesty, and good faith." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 656 (1994).

¶ 45    When an insurance company pays for an attorney to defend its insured, that does not automatically create a conflict of interest. An attorney hired by an insurance company to defend the company's insured owes a fiduciary duty to both the insurance company and the insured. *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 137 (1985). While, in reality, the attorney's loyalty may follow the purse strings, the attorney owes the insured the same professional obligations as he or she would to any client. *Id*. Conflicts of interests arise in these situations where the attorney puts the interests of the insurance company before those of the client. *Id*. For example, where the insurance company and insured disagree about whether to settle a case, a conflict arises, and the attorney cannot "continue to represent both without a full and frank disclosure of the circumstances" to his or her clients. *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 74 Ill. App. 3d 467, 474 (1979). The existence of an undisclosed conflict of interest only satisfies the breach element, but not the causation element, of a breach of fiduciary duty claim. *Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111371, ¶ 27.

¶ 46    In his fourth amended complaint, Huang alleged that Brenson failed to communicate several settlement offers from Zhou, and failed to advise him of the risk of going to trial. Failure to properly communicate a settlement offer to a client is typically considered a breach of fiduciary duty. See *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 74 Ill. App. 3d at 475 ("By failing to inform [the client] of the proposed settlement, [the attorney] foreclosed [the client] from alternatives that were available to him. *** Having failed to provide [the client] with the proper disclosure of the facts and then obtaining [the client's] consent to continued representation, [the attorney] breached a duty which, if damages and proximate cause are established, will make [the attorney] liable to [the client] for the loss caused by the lack of disclosure."). Accordingly, plaintiffs properly pleaded the existence of a fiduciary duty and its breach.

¶ 47    But, Huang still fails to allege facts showing proximate cause. Huang alleges that, if Brenson had notified him of Zhou's settlement offers, he would have accepted and "demanded that their insurance company accept it because it was within their policy limits," which was $500,000. Huang also alleges that the insurance company offered to settle the case for $50,000. Huang alleges in the fourth amended complaint that the insurance company had offered to settle Zhou's case for $100,000. But exhibits show that the insurer only offered half of that amount. The exhibits control over plaintiffs' allegations. *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 21. Huang essentially alleges that, if Brenson had properly communicated Zhou's settlement demands to him, the case would have settled and not proceeded to trial, or the costly posttrial, and appeal.

¶ 48    There are three possibilities where a settlement would have precluded the trial: (i) if plaintiffs could force their insurance company to settle, (ii) if plaintiffs could settle using their own assets, or (iii) if plaintiffs could use a combination of insurance company funds and their own assets to settle the case. Huang does not allege that he was willing or able to use his own assets to settle the case, foreclosing on the second and third possibilities. Nor does Huang allege facts showing that the professional liability insurer would have accepted Zhou's settlement offers. An insurance company need not always cede to the demands of its insured to

settle. "If an opportunity appears to settle within the policy limits, thereby protecting the insured from excess liability, the insurer must faithfully consider it, giving the insured's interests at least as much respect as its own. [Citation.] The insurer need not submit to extortion; it may reject a bad deal without waiving the protection the policy limit gives it against the vagaries of lawsuits. But if the honest and prudent course is to settle, the insurer must follow that route." *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill. App. 3d 446, 454 (1980). "[A]n insurer that undertakes the defense of a suit against the insured, where the damages sought are in excess of the policy limits, cannot arbitrarily refuse a settlement within policy limits." *Haddick v. Valor Insurance Co.*, 315 Ill. App. 3d 752, 755 (2000).

¶ 49   Huang does not allege facts that show the insurer would have or should have, in good faith, accepted Zhou's settlement demands. While, on several occasions, Zhou demanded that Huang settle the case for $400,000, $500,000, $2 million, or $3 million, Huang does not allege or assert facts showing that these demands were reasonable. Examining Zhou's written demands, we do not find citations to any cases or jury verdicts on claims similar to Zhou's. Moreover, it is not clear that, even if Brenson had properly informed Huang of Zhou's demands, Huang could have convinced or forced the insurance company to settle and avoid going to trial. Accordingly, Huang failed to plead that defendants' breach of fiduciary duty–failing to relay Zhou's settlement demands–proximately caused his damages.

¶ 50                                          CONCLUSION

¶ 51   Based on the foregoing, we affirm the dismissal of plaintiffs' claims.

¶ 52   Affirmed.